UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DARRYL C. POTTER,

                 Plaintiff,

              v.

THE CITY OF NEW YORK; NYPD POLICE OFFICER
LAMAR BARNES; NYPD SERGEANT CHAI; NYPD
POLICE OFFICER ELLISON; other employees and
agents of the City of New York identified as "JOHN
DOES" AND "JANE DOES" No. 1-10; NEW YORK
CITY HEALTH AND HOSPITALS CORPORATION
("NYCHHC"); DOCTOR FRANCE CHAPUT;
NYCHHC OFFICER MARSHALL MCRAE; other
employees and agents of NYCHHC identified as "JOHN
ROES" AND "JANE ROES" No. 1-10; AMC
ENTERTAINMENT HOLDINGS, INC. ("AMC"), and
other employees and agents of AMC, identified as
"JOHN TOES" AND "JANE TOES" No. 1-10, all
individual defendants being named in their individually
and in their official capacities,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

17-cv-8503 (AJN)(KHP)

**AMENDED
COMPLAINT**

      Plaintiff, Darryl C. Potter, by his undersigned attorney, hereby alleges as and

for his Amended Complaint the following:

## INTRODUCTION

      1.        Plaintiff, Darryl C. Potter, brings this action against the

Defendants, jointly and severally, to vindicate his civil rights and to recover

compensatory and punitive damages against each of the Defendants.  Potter was

thirty minutes late to a late-night movie at the AMC theater on 34th Street in Manhattan. When theater security guards incorrectly assumed that Potter, who is a black male, was a criminal trying to sneak into the theater, movie theater personnel set in motion a nightmarish series of events for Potter, including security guards' shoving, threatening and menacing Potter, and an illegal assault by NYPD police officers who responded to the scene. And when Potter objected to being mistreated by the NYPD and requested to speak to a supervisor, NYPD officers illegally, maliciously, and falsely declared Potter to be an "emotionally disturbed person" and forcibly removed Potter to the emergency psychiatric ward at Bellevue Hospital, where Potter was held against his will for over fifteen hours and again assaulted by hospital staff when he refused to be administered a sedative.

2.  As set forth below, the Defendants are jointly and severally liable to Potter for damages in an amount to be established at trial for the loss of Potter's liberty, for the assault and battery upon his body and his humanity, and for the degrading, humiliating and offensive treatment he received at the hands of the Defendants.

## PARTIES

3.  Plaintiff, Darryl C. Potter ("Potter"), who was 33 years old on November 5, 2016, is a black man who was at the time (and still is) living in New York City with his wife and three children (ages 13, 8 and 6).

4.      Defendant, the City of New York (the "City") is a municipal corporation duly organized and existing under the laws of the State of New York. The City is a "person" for purposes of the enforcement of the rights guaranteed under 42 U.S.C. §§ 1981 & 1983.

5.      The City is the employer of the police officer defendants, Police Officer Barnes, Police Officer Ellison, Sergeant Chai, and Police Officers John and Jane Does No. 1-10, who were the uniformed members of the New York City Police Department ("NYPD") from the Midtown South Precinct, who assaulted and unlawfully arrested and imprisoned Potter on November 5, 2016.

6.      Defendant, Police Officer Lamar Barnes is and was at the relevant time an NYPD police officer and an employee of the City.

7.      Defendant, Police Officer Ellison, is and was at the relevant time an NYPD police officer and an employee of the City.

8.      Defendant, Sergeant Chai, is and was at the relevant time an NYPD sergeant and an employee of the City.

9.      Defendants, John and Jane Does No. 1-10, are and were at the relevant time members of the NYPD and employees of the City (collectively, the "NYPD Does").

10.     Defendant, The New York City Health and Hospitals Corporation ("NYCHHC"), is a New York public corporation organized and

operating in the laws of the State and the City of New York.

11.     NYCHHC is the employer of Defendant France Chaput, a

doctor, Defendant Officer McRae, a security officer, and John and Jane Roes No.

1-10, all of whom worked for NYCHHC at the Bellevue Hospital Center, 462 First

Avenue, New York, New York 10016 ("Bellevue" or the hospital) on November 5,

2016.

12.     Defendant, France Chaput, is a doctor and at the time relevant

to this action was working in the emergency room at Bellevue as such.

13.     Defendant, Officer Marshall McRae, is a security guard and at

the time relevant to this action was working in the emergency room at Bellevue as

such.

14.     Defendants, John and Jane Roes No. 1-10, were at the time

relevant to this action working in the emergency room at Bellevue in their

capacities as security guards, nurses, doctors, of aides thereto (collectively, the

"NYCHHC Roes"), and participated in the conduct and treatment of Potter on

November 5, 2016, as set forth in greater detail below.

15.     Defendant AMC Entertainment Holdings, Inc. ("AMC") is a

foreign corporation doing business in the State of New York under the name

"AMC Lowes 34th Street 14," which is the trade name for a movie theater located

at 312 West 34th Street, New York, New York 10001 (hereinafter the "AMC

4

Theater").

16. The AMC Theater is situated within the confines of the NYPD's Midtown South Precinct and is a public accommodation within the meaning and scope of NYC Adm. Code Section 8-107(4).

17. Defendants, John and Jane Toes No. 1-10, were at the times relevant to this action working for AMC at AMC Theater in their capacities as security guards, managers and other employees and agents of AMC (collectively, the "AMC Toes"), and participated in the conduct and treatment of Potter on November 5, 2016, as set forth in greater detail below.

18. As such, the AMC Toes and AMC (collectively, the "AMC Defendants") are jointly and severally liable to Potter for the damages he sustained as a result of the events of November 5, 2016.

## JURISDICTION AND VENUE

19. Federal jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) for the federal claims, and supplemental jurisdiction over the New York common law claims is based on 28 U.S.C. § 1367(a) because those claims arise from a common nucleus of operative facts and are intertwined with the federal claims.

20. Potter has fully complied with all administrative prerequisites to filing this suit by the filing of a Notice of Claim with the City and with the

NYCHHC within the time required by local law and will comply with the post-filing requirements of the New York City Administrative Code, Section 8-502(c) by serving a copy of this Complaint, as required by Section 8-502(c).

21.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U. S. C. §§ 1391 (b) & (c).

## STATEMENT OF FACTS

22.     In the late evening hours of November 4, 2016, Potter set out from his home to go see a late-night showing of "Dr. Strange" which was playing at the AMC Theater.

23.      Porter arrived at the AMC Theater about 30 minutes later than the scheduled time, and after securing his pre-paid ticket at a foyer kiosk, Potter entered the theater lobby, which was unattended at the time, and proceeded to the elevator to go to the manager's office, which was on the 2nd or 3rd floor to request that he be permitted to exchange his ticket for another showing time.

24.     Potter was a frequent patron of the AMC Theater and as a result was a "stubs member" of the AMC Theater, which enabled Potter to extra benefits as a reward for his loyal patronage of the AMC Theater.

25.     Potter was familiar with the AMC policy of permitting patrons who arrived late for a showing to be permitted to exchange their ticket for another showing of the same movie.

26.     As Potter entered the lobby elevator, John or Jane Toe No. 1, an unknown person appearing to be an employee of AMC, asked Potter where he was going.  As the elevator doors were closing, Potter was able to inform the person that he was going to the manager's office.

27.     When Potter arrived on the floor where the manager's office was located, he proceeded to speak with the manger, Jane Toe No. 2, a Hispanic female, and attempted to explain his request to exchange his ticket for another showing.  Rather than being treated as a loyal customer, the manager became aggressive, hostile and belligerent toward Potter.  Potter is a tall black male and upon information and belief, the manager and others treated Potter in a hostile and discriminatory manner because of his race.

28.     Soon after Potter's initial contact with the manager, several additional AMC employees, John and Jane Toes No. 3-7, in security uniforms approached Potter while he was still trying to explain himself to the manager.

29.     The other AMC employees, John and Jane Toes No. 3-7, who were also Hispanic, also became aggressive, hostile and belligerent toward Potter because of his race.

30.      In a hostile, unjustified and discriminatory manner, the AMC employees, John and Jane Toes 2-7, directed Potter to leave the premises because of his race in violation of his rights under 42 U. S. C. Section 1981 and NYC Adm.

Code Section 8-107(4).  One of the AMC employees, a John Toes, who was

Hispanic, expressly stated to Potter that he would not be treated this way in "White

America."

31.        When Potter objected to being treated in a hostile and

discriminatory manner, the AMC employees put their hands on Potter and began

pushing and shoving him down the escalator, in violation of Potter's rights to be

free from assault and battery.

32.        While being pushed and shoved out of the theater, several

uniformed members of the NYPD arrived at the lobby of the theater and

immediately surrounded Potter in a menacing manner.

33.        Fearful for his life, Potter dropped to his knees and placed his

hands above his head to demonstrate that he was not acting in a dangerous or

threatening manner and that he did not have any kind of weapon in his hands.

34.        While in this non-threatening position, Potter told the NYPD

officers who had surrounded him that he had a ticket in his pocket.  Rather than

reach into his pocket to retrieve the ticket, Potter requested that the officers remove

the ticket from his pocket so that they could examine the proof that he was not a

criminal and that he did not do anything wrong.

35.        The NYPD Does removed Potter's ticket from his pocket and

determined that he in fact was speaking the truth.

36.     The NYPD Does exceeded the consent provided by Potter when they conducted a search of the entire contents of his pocket beyond locating his ticket, in violation of his rights under the Fourth Amendment to be free from unreasonable and warrantless searches.

37.     Although the NYPD officers determined that Potter had done nothing wrong, they told him that he had to leave the theater because the AMC employees were telling him to leave the premises.

38.      Rather than intervening to protect Potter's rights to be free from racial discrimination and racial profiling, the NYPD officers aided and abetted the AMC employees in their violation of Potter's civil rights under 42 U. S.C. Section 1981 and NYC Adm. Code 8-107(4).

39.     As Potter was leaving the theater, Defendant Barnes came rushing into the lobby area, stating "is this him?" in reference to Potter, as if Potter was the perpetrator of a crime.  Although the other NYPD officers and Potter told Barnes that Potter had done nothing wrong, Barnes grabbed Potter by Potter's collar and his jacket and shoved Potter out of the theater through a heavy glass door, using Potter's face to push open the door.

40.     The force used by Barnes caused sharp and substantial pain to Potter's face.  That force was utterly unnecessary and abusive under the circumstances, constituting an unjustified use of excessive force in violation of

Potter's Fourth Amendment rights and Potter's rights to be free from an assault and battery in violation of the laws of the State of New York.

41.     After being released by Barnes, Potter approached in a civil, non-hostile manner Defendant Sergeant Chai, who had also arrived at the scene and presented himself as the sergeant in charge of the scene.

42.     Potter told Chai that he objected to Barnes's treatment of him and that he wanted to speak to Chai's supervisor in order to make a complaint against Barnes.

43.     Defendants Chai, Barnes, and Barnes's patrol partner that night, Defendant Ellison, who had arrived at the scene with Barnes, berated and ridiculed Potter for his request, and when it became clear to Chai, Barnes and Ellison that Potter was not going to drop his request to speak to a supervisor to make a complaint about Barnes's treatment of him, Chai declared Potter an emotionally disturbed person, and Barnes and Ellison placed Potter in handcuffs with his arms and hands cuffed from behind his back, and unlawfully arrested and imprisoned Potter.

44.     At the direction of Sergeant Chai, an ambulance arrived, Ellison and Barnes put Potter into the ambulance, and Ellison and Barnes accompanied Potter to Bellevue Hospital.

45.     Potter was brought to Bellevue Hospital against his will and

without excuse or justification based on the bogus designation of Potter as a dangerous and emotionally disturbed person.

46.     While Potter was explaining the events of that evening to an EMT who arrived with the ambulance, Barnes began menacing Potter with threatening looks, balled up his hand into a fist, and caused Potter to fear that he was again going to be physically assaulted by Barnes.

47.     Upon information and belief, Barnes was menacing Potter because he wanted to stop Potter from reporting Barnes's conduct to the EMT.

48.     While entering the hospital, Ellison yanked on the handcuffs, which were restraining Potter's arms from behind his back, and falsely stated that Potter should "stop resisting."  As a result, Ellison inflicted sharp and substantial pain on Potter and used excessive force on Potter without justification.

49.     After Potter entered Bellevue Hospital, Ellison and Barnes escorted Potter to a locked part of the psychiatric emergency room.

50.     The individuals in the locked psychiatric emergency room consisted of several seriously deranged individuals who where unrestrained and acting in a wild and dangerous manner.

51.     On one occasion shortly after Potter arrived and in the presence of Potter, the hospital staff assaulted a belligerent patient who was dressed only in his underwear and beat him down so badly that the patient defecated on himself.

Blood and feces from the beaten patient were spread on the floors and the walls. As a result of this incident and the other dangerous and unhealthily conditions of the locked room, Potter felt that his health and his physical safety were at risk because the room lacked any reasonable kinds of protection or supervision.

52.     As a result, Potter urgently and repeatedly implored the hospital staff to promptly evaluate him so that he could go home.

53.     Over the course of several hours, Potter repeatedly told the hospital staff that he did not belong in the hospital, that he did nothing wrong, and that he was not crazy or dangerous. Potter also repeatedly requested that a doctor promptly see him.

54.      Rather that providing Potter with a safe environment, the staff at Bellevue told Potter that there was no doctor available and that he would have to wait. The staff also failed to take any steps to address Potter's concerns about the conditions of the room, which were threatening Potter's health and physical safety.

55.     After a sustained period of time waiting, Potter began demanding that he be released or that a doctor see him.

56.     NYCHHC and the NYCHHC Defendants failed to expeditiously investigate the contention that Potter was emotionally disturbed and was a danger to himself or others, and as a result, Potter suffered needless loss of his liberty and was needlessly exposed to traumatic experiences while locked in the

psychiatric emergency room.

57.     Rather than complying with Potter's requests and demands, John Roes and Jane Nos. 1-5, who were security guards and nursing staff at Bellevue Hospital, ultimately entered the locked room with Defendant Chaput, who was allegedly the attending doctor at the time, and forced Potter onto a stretcher for the stated purpose of giving Potter a sedative.

58.     Potter told Defendant Chaput and the Bellevue staff who had entered the locked room that he did not want any drugs or sedatives for any reason. Potter also informed the staff that he has diabetes and a heart condition and that he was concerned that any kind of medication or drug could cause him serious harm. Potter also objected to being administered any kind of medication before being evaluated by a doctor.

59.     Defendant Chaput and the Bellevue Roes ignored Potter's stated concerns and objections, and the John and Jane Roes,, acting at the direction of Defendant Chaput, forced Potter to lie down on a stretcher, strapped Potter down on the stretcher, and injected him with a sedative.

60.     While Potter was being held down against his will, Defendant McRae, who was one of the Bellevue security officers in the room, held Potter down by use of a folded sheet pressed against Potter's neck and throat.   The force used by Defendant McRae was so great that it caused sprains, strains, and swelling

in the ligaments, tendons and/or muscles of Potter's neck. In addition, McRae's use of the folded sheet, as applied to Potter's neck and throat, cut off air to Potter's lungs, and as a result, Potter began to suffocate. After a nurse injected the sedative into Potter's arm, Defendant McRae lifted the pressure off of Potter's neck and throat, leaned over to Potter, and whispered into Potter's ear "Nigger, I can kill you."

61.     Defendant Chaput never conducted any kind of evaluation of Potter and without basis claimed that Potter was "resisting" and acting belligerent when in fact Potter simply wanted to be promptly evaluated and wanted to refuse any kind of forced sedative or medication.

62.     Later that same day and after the sedative's effect wore off, at about 11:00 AM, Potter woke up still restrained in the stretcher in the same locked room he had been in at the time the sedative was administered.   For the past ten hours or so, since he had arrived at Bellevue, Potter was not provided with food and his requests for access to medication for his diabetes were ignored.

63.     At about 4:00 PM that same day, Potter was discharged and hospital staff suggested that he go see a therapist.

64.     Potter should never have been held against his will at Bellevue.

65.     At no time was Potter dangerous to himself or others and no reasonable person could have reached a conclusion that it was likely that Potter

was dangerous to himself or others.

66.     At no time did Potter say anything or do anything that could possibly be rationally understood to suggest that he was dangerous to himself or others.

67.     Potter never manifested any conduct or spoke any words that suggested that he was dangerous to himself or others.

68.     AMC, NYCHHC and the City of New York are liable for the actions of the individual defendants based on the theory of respondeat superior liability because their employee or agents were acting within the scope of their employment and under their control.

69.     Defendants Chai and Chaput are liable as supervisors under the theory of vicarious liability for the actions of their subordinates, who were acting within the scope of their employment and under their control.

70.     All the individual defendants in this action were acting as agents of each other.  Each defendant knew or reasonably should have known that the other individual defendants were engaging in the wrongful conduct alleged herein, and that this conduct would directly and proximately result in injury to Potter.

## FIRST CLAIM FOR RELIEF
### (Section 1983 Fourth Amendment; False Arrest and Imprisonment, Excessive Force & Failure to Intervene)

71.     Potter repeats all the above allegations as if set forth herein at length.

72.     The individual defendants, Officers Barnes and Ellison, Sergeant Chai, and Defendants NYPD Does (collectively the "NYPD Defendants"), were acting jointly at all times relevant to this case as state actors acting under color of state law.

73.     The individual defendants, Officers Barnes and Ellison, Sergeant Chai, and Defendants NYPD Does, jointly and separately, are liable to Potter for their warrantless search of Potter; for the excessive force used by both Barnes and Ellison on Potter; for the false arrest and false imprisonment of Potter; and for the failure by Sergeant Chai and the NYPD Does to intervene to stop the violations in their presence of Potter's civil rights by the NYPD Defendants and the AMC Defendants.

74.     The AMC Toes were jointly engaged with the NYPD Defendants regarding their conduct toward Potter and they willingly participated with, and collaborated with, the NYPD Defendants in their joint decisions to assault Potter and to eject him from the theater.

75.     The NYPD Defendants did not have probable cause to believe

that Potter was a danger to himself or others and there were no exigent circumstances that justified their arrest and imprisonment of Potter as an emotionally disturbed person.

76.     The NYPD Defendants violated Potter's rights under the Fourth Amendment of the United States Constitution:  (i) by searching his pockets beyond the consent that Potter gave to retrieve his ticket; (ii) by assaulting Potter and using excessive force upon him; (iii) by placing him in custody without any basis or grounds to believe that he was dangerous to himself or others; and (iii) by falsely arresting, imprisoning and taking Potter to the hospital.

77.     Potter was aware of his confinement, the defendants intended to confine Potter, Potter did not consent to it, and the NYPD Defendants lacked any privilege or right to arrest or imprison Potter.

78.     The AMC Toes aided and abetted the NYPD Defendants' conduct and are liable for their active assistance and participation in the violations of Potter's constitutional and civil rights.

79.     Chai and the NYPD Does breached their duty to Potter by failing to intervene on his behalf and stop the violations in their presence of his constitutional and civil rights.

80.     The NYPD Defendants and the AMC Defendants are liable to Potter for the damages and injuries and loss of liberty that he suffered at Bellevue

Hospital because each such defendant knew and should have known that it was likely that Potter was going to be held by the NYCHHC Defendants against his will for a sustained period of time and that an involuntary admission or forced stay in the psychiatric emergency room at Bellevue Hospital would be emotionally traumatic for anyone.

81.     The City of New York is liable for the conduct of the NYPD defendants because it is an established practice and policy of the NYPD not to discipline members of the NYPD who unlawfully employ their power to declare persons "emotionally disturbed" and that as a result of that practice and policy of not disciplining members of the NYPD for abusing their powers under the Mental Hygiene Law and Patrol Guide 216-05, members of the service, including the individual NYPD defendants herein, act with impunity.

82.     Upon information and belief, the NYPD does not, or does not adequately, enforce or discipline violations of the law or Patrol Guide 216-05, governing the proper use of the power to declare a person emotionally disturbed.

83.     Upon information and belief, it is the policy, custom and practice of the NYPD to inadequately discipline its staff, thereby failing to discourage constitutional violations.

84.     As a result of those practices, policies and customs, members of the NYPD, including the individual NYPD defendants in this action, believe that

their actions will not be monitored and that their misconduct will not punished

because the attitude created by the NYPD fosters and creates an "anything goes"

attitude where police officers can arbitrarily deem a person emotionally disturbed

without fear or concern that they will be disciplined for such misconduct.

85.     By failing to properly enforce through discipline the rules of

law governing when a person can be properly deemed emotionally disturbed, the

City of New York has given the members of the service de facto and unduly broad

discretion to invoke those powers without any limitations imposed on the arbitrary

abuse of that power.

86.     The City of New York is and has been deliberately indifferent

to the fact that members of the NYPD routinely misuse their powers under the

Mental Hygiene Law and Patrol Guide 216-05, and the City of New York's

deliberate indifference in fact caused the false arrest and imprisonment of Potter.

87.     As a result of the defendants' conduct, each of them are liable

to Potter for compensatory and punitive damages in an amount to be established as

trial under 42 U. S. C. § 1983.

## SECOND CAUSE OF ACTION
### (Section 1983 First Amendment Retaliation)

88.      Potter repeats all the above allegations as if set forth herein at

length.

89.     Defendant Barnes, Ellison, and Chai deemed and declared

Potter an emotionally disturbed person in retaliation for his protected speech in objecting to Barnes's conduct and requesting to speak to a supervisor in order to make a complaint to a supervisor about Barnes's conduct.

90. A reasonable person under the circumstances would likely be restrained from speaking out against Barnes's conduct if that person knew that the act of speaking out would lead or may lead to being falsely arrested and imprisoned and taken to a psychiatric ward as an emotionally disturbed and dangerous person.

91. The retaliatory conduct by Defendants Barnes, Ellison and Chai had the tendency to impede or restrict the free exercise of the rights of freedom of speech and the right to petition the government by presenting grievances against it and its actors.

92. As a result of Defendant Barnes's, Ellison's and Chai's retaliatory conduct, each of them is jointly and severally liable to Potter under 42 U. S. C. Section 1983 for compensatory and punitive damages caused by their unlawful conduct.

### THIRD CLAIM FOR RELIEF
### (Section 1983 False Imprisonment, Excessive Force, False Imprisonment, Assault and Battery)

93. Potter repeats all the above allegations as if set forth herein at length.

94. The NYCHHC Defendants, NYCHHC, Defendant Chaput,

Defendant McRae, and the NYCHHC Roes are liable to Potter for damages under 42 U. S. C. Section 1983 for assault, excessive force, false arrest and false imprisonment because they held Potter against his will and without his consent in a locked room without excuse, justification or privilege and because they assaulted Potter and used excessive and unjustified force against him.

95.     The individual NYCHHC Defendants were at all relevant times acting as state actors for a public corporation and were acting unlawfully under color of state law.

96.     Defendant McRae and the other individual hospital defendants, NYCHHC Roes, are liable to Potter for assault, battery and excessive force upon Potter when they attacked Potter, forced him onto a stretcher, physically restrained Potter, causing injuries to his neck, suffocated him, and injected him with a sedative against his will and without justification or consent.

97.      Defendant Chaput is liable for the above-referenced conduct of Defendant McRae and the NYCHHC Roes because she ordered them to take their unlawful actions against him and because she was their direct supervisor at the time.

98.     At no time was Potter dangerous to himself or others and no reasonable person could have reached a conclusion that it was likely that Potter was dangerous to himself or others.

99.     At no time did Potter say anything or do anything that could possibly be rationally understood to suggest that he was dangerous to himself or others.

100.     Potter never manifested any conduct or spoke any words that suggested that he was dangerous to himself or others.

101.     NYCHHC is liable for the conduct of its individual staff members because it is an established practice and policy of the NYCHHC at Bellevue not to discipline members of its staff who use excessive force or unlawfully employ their power to declare persons "emotionally disturbed" and that as a result of that practice and policy of not disciplining its Bellevue staff for abusing their powers under the Mental Hygiene Law, members of the staff, including the individual NYCHHC defendants act with impunity.

102.     Upon information and belief, the NYCHHC does not, or does not adequately enforce violations of the law governing the proper use of force or the power to declare a person emotionally disturbed.

103.     Upon information and belief, it is the policy, custom and practice of the NYCHHC to inadequately discipline its staff, thereby failing to discourage constitutional violations.

104.     As a result of those practices, policies and customs, members of the NYCHHC, including the individual NYCHHC defendants in this action,

believe that their actions will not be monitored and that misconduct will not

punished because the attitude created by the NYCHHC fosters and creates an

"anything goes" attitude where Bellevue staff members can use unjustified and

excessive force or arbitrarily deem a person emotionally disturbed without fear or

concern that they will be disciplined for such misconduct.

105.     By failing to properly enforce through discipline the laws and

regulations governing the use of force, the use of sedatives and the involuntary

hospitalization of persons alleged to be dangerous, the NYCHHC has given its staff

de facto discretion to invoke their powers over patients without any limitations

imposed on the arbitrary abuse of that power.

106.     NYCHHC is and has been deliberately indifferent to the fact

that members of the NYCHHC routinely misuse their powers.  That deliberate

indifference caused the assault and false arrest and imprisonment of Potter.

107.     As a result, the NYCHHC Defendants are jointly and severally

liable to Potter under 42 U. S. C. Section 1983 for compensatory and punitive

damages caused by their unlawful conduct.

## FOURTH CLAIM FOR RELIEF
### (42 U. S. C. 1981 - Equal Rights Under the Law)

108.      Potter repeats all the above allegations as if set forth herein at

length.

109.      The AMC Defendants are liable to Potter for violation of his

rights to be free from discrimination pursuant to 42 U. S. C. Section 1981.

110.    The AMC Theater is a place of public accommodation and Potter had a lawful right as a ticketholder and as a member of the public to enter the theater and to be treated the same as other members of the public without regard to his race.

111.    The AMC Defendants denied Potter the enjoyment of the benefits, privileges, terms and conditions of his rights as a ticket holder because of his race.

112.    As a result, the AMC Defendants are liable to Potter for compensatory and punitive damages in an amount to be established at trial.

## FIFTH CLAIM FOR RELIEF
### (Common Law False Arrest and False Imprisonment)

113.    Potter repeats all the above allegations as if set forth herein at length.

114.     Defendants, the City of New York, Chai, Barnes, Ellison,  and the NYPD Does are liable to Potter for false arrest and false imprisonment under the common law of the State of New York arising from their conduct at the AMC Theater and Bellevue Hospital on November 5, 2016.

115.    Defendants AMC, NYCHHC, McRae, Chaput and the NYCHHC Roes are liable to Potter for false arrest and false imprisonment under the common law of the State of New York arising from the events that occurred at

the AMC Theater and at Bellevue Hospital on November 5, 2016.

116.    As a result, said Defendants are liable to Potter for compensatory and punitive damages in an amount to be established at trial.

### SIXTH CLAIM FOR RELIEF
### (Common Law Assault and Battery)

117.    Potter repeats all the above allegations as if set forth herein at length.

118.    Defendants, the City of New York, Chai, Barnes, Ellison and the NYPD Does are liable to Potter for assault and battery under the common law of the State of New York arising from their conduct at the AMC Theater and at Bellevue Hospital on November 5, 2016 because they: (a) made bodily contact with Potter, made such contact intentionally, and such contact was offensive in nature; and (b) intentionally placed Potter in apprehension of imminently harmful or offensive contact.

119.    Defendants NYCHHC, McRae, Chaput and the NYCHHC Roes are liable to Potter for assault and battery under the common law of the State of New York arising from their conduct at Bellevue Hospital on November 5, 2016 because they: (a) made bodily contact with Potter, made such contact intentionally, and such contact was offensive in nature; and (b) intentionally placed Potter in apprehension of imminently harmful or offensive contact.

120.    Defendants AMC and the AMC Toes are liable to Potter for

assault and battery under the common law of the State of New York arising from

their conduct at the AMC Theater on November 5, 2016 because they: (a) made

bodily contact with Potter, made such contact intentionally, and such contact was

offensive in nature; and (b) intentionally placed Potter in apprehension of

imminently harmful or offensive contact.

121.     As a result, said Defendants are liable to Potter for

compensatory and punitive damages in an amount to be established at trial.

### SEVENTH CLAIM FOR RELIEF
### (NYC Adm. Code Section 8-107(4) –
### Equal Rights to Public Accommodations)

122.     Potter repeats all the above allegations as if set forth herein at

length.

123.     Defendant AMC and the AMC Toes violated Potter's rights

under NYC Adm. Code Section 8-104(4).

124.     Defendant AMC is the owner, franchisor, franchisee, lessor,

lessee, and/or proprietor of the AMC Theater.

125.     The AMC Toes are managers, superintendents, agents and/or

employees of the AMC Theater.

126.     The AMC Theater is a place of public accommodation as

defined by the New York City Administrative Code.

127.     AMC and the AMC Toes violated Potter's rights when they

refused, withheld from, and denied Potter the full and equal enjoyment, on equal terms and conditions, of the accommodations, advantages, services, facilities or privileges of the AMC Theater because of Potter's race.

128.     As a result, the AMC and the AMC Toes are liable to Potter for compensatory and punitive damages in an amount to be established at trial.

## EIGHTH CLAIM FOR RELIEF
### (Common Law Emotional Distress Damages)

129.     Potter repeats all the above allegations as if set forth herein at length

130.     All the defendants, jointly and separately, are liable to Potter for intentional, reckless, grossly negligent, and negligent infliction of emotional distress.

131.     The defendants' conduct was extreme and outrageous conduct that was intended to cause Potter severe emotional distress and did cause him severe emotional distress.

132.     The defendants committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of injuring Potter, from an improper motive amounting to malice and in conscious disregard of Potter's rights, entitling him to recover punitive damages in an amount to be proven at trial.

133.     As a proximate result of the defendants' conduct, Potter has suffered and continues to suffer extreme emotional distress.

134.    As a result of the defendants' conduct, each of them is jointly and severally liable to Potter for compensatory and punitive damages caused by their unlawful conduct.

## NINTH CLAIM FOR RELIEF
### (Negligent Infliction of Emotional Distress)

135.    Potter repeats all the above allegations as if set forth herein at length.

136.    All the defendants, jointly and separately are liable to Potter for negligent infliction of emotional distress.

137.    The individual defendants each owed Potter a duty to act with reasonable care and the damages and suffering caused to Potter by the defendants was reasonably foreseeable.

138.    At all relevant times, the defendants had the power, ability, authority and duty to stop the conduct described herein and to intervene to prevent or prohibit such conduct.  Rather than exercise that power, the defendants each acquiesced to the conduct of others that damaged and injured Potter.

139.    At all relevant times, all the defendants knew, or reasonably should have known, that the conduct described herein would and did proximately result in Potter's emotional distress.

140.    Despite said knowledge, power, and duty, the defendants negligently failed to stop engaging in the conduct described herein and negligently

failed to prevent or to prohibit such conduct or otherwise to protect Potter, thereby breaching their duty to him.

141.    The individual defendants unreasonably endangered Potter's physical safety and caused Potter to fear for his own safety.

142.    As a result of the defendants' conduct, all of them are jointly and severally liable to Potter for compensatory and punitive damages in an amount to be established at trial.

## TENTH CLAIM FOR RELIEF
### (Negligent Care and Treatment)

143.    Potter repeats all the above allegations as if set forth herein at length.

144.    NYCHHC, Chaput and the NYCHHC Roes, jointly and separately, are liable to Potter for negligence in the careless, reckless and improper way that they evaluated and treated Potter.

145.    NYCHHC, Chaput and the NYCHHC Roes owed Potter a duty of care and they breached that duty, causing Potter damages.

146.    As a result of the defendants' conduct, each of them is jointly and severally liable to Potter for damages caused by their unlawful conduct.

## ELEVENTH CLAIM FOR RELIEF
### (Negligent Staffing, Hiring, Training and Supervision)

147.    Potter repeats all the above allegations as if set forth herein at

length.

148.     Defendant NYCHHC failed to properly staff and failed to sufficiently staff its psychiatric emergency room, and it negligently selected, hired, trained, retained, assigned and supervised its staff, including Chaput, McRae and the NYCHHC Roes.

149.     NYCHHC was negligent and careless when it poorly and insufficiently staffed its psychiatric emergency room, and when it selected, hired, trained, retained, assigned, and supervised its staff, including Chaput, McRae and the NYCHHC Roes.

150.     NYCHHC had the authority to supervise, prohibit, control, and regulate Chaput, McRae and the NYCHHC Roes so as to prevent these acts and omissions from occurring.

151.     NYCHHC knew or reasonably should have known that unless they properly and sufficiently staffed, supervised, prohibited, controlled, and/or regulated its psychiatric emergency room and the conduct of Chaput, McRae and the NYCHHC Roes, those individual defendants would perceive their acts and omissions as being ratified and condoned.

152.     NYCHHC failed to exercise due care by failing to properly staff, supervise, prohibit, control, or regulate Chaput, McRae and the NYCHHC Roes and/or by failing to protect Potter. As a direct and proximate result of Chaput,

McRae and the NYCHHC Roes' acts and omissions, Potter has suffered and continues to suffer injuries entitling him to damages in an amount to be determined at trial.

## TWELFTH  CLAIM FOR RELIEF
### (Negligence – All Defendants)

153.    Potter repeats all the above allegations as if set forth herein at length.

154.    All the defendants owed Potter a duty of care and breached that duty by their negligent conduct, which caused Potter damages in an amount to be established at trial.

WHEREFORE, Plaintiff demands that judgment be entered against each of the Defendants, jointly and severally, for compensatory damages, for punitive damages, for reasonable attorneys' fees, expert's fees, costs and expenses of this action pursuant to 42 U. S. C. § 1988 and NYC Adm. Code Section 8-502(g), together with interest thereon as provided by law and such other and further relief as the Court deems just and proper.

# JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  March 23, 2018

*s/NBS*

_____

Nathaniel B. Smith
225 Broadway – Suite 1901
New York, NY 10007
212-227-7062
natbsmith@gmail.com